MURRAY, Appellee,

v.

ACCOUNTING CENTER & TAX SERVICES, INC. et al., Appellant.

[Cite as *Murray v. Accounting Ctr. & Tax Servs., Inc.*, 178 Ohio App.3d 432, 2008-Ohio-5289.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–08–1014.

Decided Oct. 10, 2008.

Robert J. Bahret and Keith J. Watkins, for appellee.

Richard R. Malone and Milton E. Pommeranz, for appellant.

---

Skow, Judge.

{¶ 1} This is an appeal from a judgment by the Lucas County Court of Common Pleas, granting summary judgment in favor of appellee, Julie Ray Murray, and against appellants, Accounting Center & Tax Services, Inc. and TPAC, Inc.[1] For the reasons that follow, we reverse the judgment of the trial court.

{¶ 2} This case arises from a dispute between the parties regarding an employment-and-noncompete agreement that had been entered into in January 1999 between Murray and Murray's former employer, the Accounting Center of Lucas County, Inc. Murray began working for the Accounting Center of Lucas County in August 1991. On or about January 18, 1999, Murray's boss—and owner of the business—Phillip Roberts, presented her with the subject agreement and told her that if she wanted to get paid that day, she would sign it. Murray did as she was told, and she signed the agreement.

{¶ 3} On its face, the agreement provides that it was made "[b]y and between **The Accounting Center of Lucas County, Inc.** (hereinafter referred to as the FIRM and/or EMPLOYER), and **Julie Rae Murray** (hereinafter referred to as the EMPLOYEE)." (Boldface sic.)

{¶ 4} Under the heading "Noncompete upon Termination," the agreement states:

---

1. TPAC, Inc. and Accounting Center & Tax Services, Inc. are one and the same entity, TPAC, Inc. having changed its name to Accounting Center & Tax Services sometime after February 27, 2004. Thus, although the complaint in this case names both TPAC, Inc. and Accounting Center & Tax Services, Inc. as defendants, there is, in fact, just one defendant corporation.

{¶ 5} "After termination of employment, the employee shall not for a period of twenty-four (24) months, either directly or indirectly, without the express written consent of EMPLOYER, accept professional business or fees, either directly or indirectly, from any person who is a client of EMPLOYER * * * except as otherwise provided for in this paragraph."

{¶ 6} Under a separate heading, entitled "Option to Serve Clients," the agreement states that if Murray were to "continue to choose to serve clients of the FIRM," she would be required to pay to the employer the greater of certain specified amounts of money or 125–150 percent of the billing performed for those clients by the employer.

{¶ 7} At the end of the agreement, under the heading, "Assignment," there is a provision stating, "EMPLOYER hereunder may transfer this Agreement and the provisions upon the merger or sale of the FIRM."

{¶ 8} The entire time that Murray worked for the Accounting Center of Lucas County, she was paid hourly wages.

{¶ 9} In March 2004, Roberts sold his business to appellant, thereby terminating Murray's employment with the Accounting Center of Lucas County. In connection with that sale, Roberts executed an agreement entitled "Assignment and Assumption Agreement" with appellant's owner, Timothy Pinkelman. Pursuant to that agreement, the Accounting Center of Lucas County assigned to appellant all of its right, title, and interest in, among other things, Murray's employment-and-noncompete agreement.

{¶ 10} Following the sale of the business, Murray, without any interruption or changes in her duties, hours, or pay, began working for appellant.

{¶ 11} In November 2006, appellant presented Murray with a new proposed agreement, entitled "Confidentiality and Non–Competition Agreement," and a separate, individualized compensation offer relative to her continued employment with appellant. Under the new compensation offer, Murray's pay was to have been based on commissions, rather than an hourly wage. Because Murray did not want to be paid on commission, she did not accept appellant's offer, and she did not sign the confidentiality-and-noncompetition agreement.

{¶ 12} As a result of the failure of Murray and appellant to come to a mutual agreement concerning Murray's continued employment, appellant terminated Murray's employment on or about January 2, 2007. In a letter dated January 5, 2007, appellant informed Murray that she was obligated under the provisions of the 1999 noncompete agreement and that if she violated those provisions, all available remedies would be pursued in order to protect appellant's interests.

{¶ 13} Murray acknowledges that following the termination of her employment with appellant, she performed, and continues to perform, accounting and tax-

preparation services for various clients who were clients of appellant at the time that she was employed by appellant.[2]

{¶ 14} On January 16, 2007, Murray filed a complaint in this action, seeking declaratory judgment. Appellant responded with an answer and counterclaim. The parties subsequently filed cross-motions for summary judgment, and on December 12, 2007, the trial court issued an opinion and judgment entry granting Murray's motion for summary judgment and denying that filed by appellant. It is from this judgment that appellant currently appeals, raising the following assignment of error:

{¶ 15} I. "The trial court erred as a matter of law when it found that the non-compete agreement entered into between plaintiff-appellee and her former employer was not enforceable by defendant-appellant."

{¶ 16} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Civ.R. 56(C) provides:

{¶ 17} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. * * *."

{¶ 18} Summary judgment is proper where (1) no genuine issue of material fact remains to be litigated and (2) the moving party is entitled to judgment as a matter of law, and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. *Ryberg v. Allstate Ins. Co.* (July 12, 2001), 10th Dist. No. 00AP–1243, 2001 WL 777121, citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936.

{¶ 19} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once this burden has been satisfied, the nonmoving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. *Id.*

---

2. Asserting that the identity of her customers is protected and privileged, Murray, upon the advice of her counsel, has refused to identify any of the customers for which she has provided accounting and tax-preparation services since she left appellant's employment.

{¶ 20} The instant case requires us to determine: (1) whether the 1999 employment-and-noncompete agreement was properly assigned to appellant when it acquired Roberts's business; and, if so, (2) whether, and to what extent, the 1999 employment-and-noncompete agreement is enforceable against Murray.

{¶ 21} Here, the assignment clause contained within the 1999 employment-and-noncompete agreement expressly provides that the agreement and its provisions are transferable upon the merger or sale of the firm. The agreement (although clearly not the product of any meaningful negotiation) was signed, and apparently assented to, by Murray. In 2004, in conjunction with Roberts's sale of the firm to appellant, the employment-and-noncompete agreement was properly assigned to appellant by way of the assignment-and-assumption agreement executed by Roberts and Pinkelman.

{¶ 22} Arguing that there was no valid assignment, Murray points out that she was not notified of the assignment at the time of the 2004 transfer of the business. In making this argument, Murray fails to cite (and this court's research fails to reveal) any authority to support her position that notification to her was required for a valid assignment.

{¶ 23} Having found that the 1999 employment-and-noncompete agreement was validly assigned, we must next determine whether, and to what extent, it may be enforced against Murray. In Ohio, reasonable noncompete agreements are enforced, and unreasonable noncompete agreements are enforced to the extent necessary to protect an employer's legitimate interest. *Procter & Gamble Co. v. Stoneham* (2000), 140 Ohio App.3d 260, 270, 747 N.E.2d 268. "A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544, paragraph two of the syllabus.

{¶ 24} If a covenant not to compete is unreasonable, courts are empowered to modify the terms to create a reasonable covenant between the parties. *Rogers v. Runfola & Assoc., Inc.* (1991), 57 Ohio St.3d 5, 8, 565 N.E.2d 540. In so doing, courts should consider the following factors:

{¶ 25} " '[T]he absence or presence of limitations as to time and space, * * * whether the employee represents the sole contact with the customer; whether the employee is possessed with confidential information or trade secrets; whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition; whether the covenant seeks to stifle the inherent skill and experience of the employee; whether the benefit to the employer is disproportional to the detriment to the employee;

whether the covenant operates as a bar to the employee's sole means of support; whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and whether the forbidden employment is merely incidental to the main employment.' * * *." Id., quoting *Raimonde*, 42 Ohio St.2d at 25, 71 O.O.2d 12, 325 N.E.2d 544.

{¶ 26} With these factors in mind, we conclude that the restraints and resultant hardships on Murray do, in fact, exceed that which is reasonable to protect appellant's legitimate business interests. Temporally, Murray is prohibited from working for customers of appellant for a period of 24 months. For 16 years, Murray has supported herself, in whole or in part, by doing tax-preparation work. She has done so by working for employers, such as appellant, and by working on her own. We find that imposing a two-year time restriction is unreasonable and will create an undue hardship on her.

{¶ 27} Our inquiry does not end here, however. We must next determine whether some restrictions prohibiting Murray from competing are necessary to protect appellant's business interests. The record reveals that appellant and his predecessor in interest developed a clientele with which Murray had direct contact, on a regular and ongoing basis. Certainly, appellant has a legitimate commercial interest to protect. For this reason, we find appellant's assignment of error well taken.

{¶ 28} Balancing the restraints and projected hardships on Murray with appellant's interests, and upon the authority of *Raimonde*, 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544, and App.R. 12(B), we modify the 24–month restriction as follows:

{¶ 29} Sixty days from the date of this order, Murray shall be prohibited for a period of one year from servicing appellant's clients.

{¶ 30} For all of the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is reversed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment reversed.

HANDWORK and OSOWIK, J., concur.