[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Salemi v. Cleveland Metroparks,* Slip Opinion No. 2016-Ohio-1192.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-1192

SALEMI, APPELLANT, *v.* CLEVELAND METROPARKS, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Salemi v. Cleveland Metroparks,* Slip Opinion No. 2016-Ohio-1192.]

*Mandamus—Public Records—R.C. 2731.04's requirements that mandamus actions be brought in the name of the state on the relation of the person applying and that the complaint be verified are not jurisdictional—Failure to comply with R.C. 2731.04 constitutes waivable error—Respondent's customer list meets criteria for trade-secret exception to Public Records Act—Directives from respondent's in-house counsel are privileged—In camera review not required—Judgment of the court of appeals affirmed.*

(No. 2014-1801—Submitted July 7, 2015—Decided March 24, 2016.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 100761, 2014-Ohio-3914.

_____

**Per Curiam.**

{¶ 1} Relator, Joseph Salemi, appeals from a decision of the Eighth District Court of Appeals that granted in part and denied in part a writ of mandamus in connection with his request for records from public golf courses operated by Cleveland Metroparks, which had declined to provide the records, asserting that they were trade secrets or protected by the attorney client privilege and exempt from disclosure. Salemi has also filed a motion in this court seeking an order to show cause why Metroparks and its attorneys should not be held in contempt.

**Facts and Procedural History**

{¶ 2} Salemi runs the Boulder Creek Golf Club. On September 25, 2013, he sent an e-mail to Metroparks requesting three categories of its records: (1) the e-mail addresses of persons who had "signed up for email lists" for all golf courses owned or operated by Metroparks, (2) the e-mail addresses of persons who had booked tee times electronically, and (3) the names of people or entities that had outings or events at any Metroparks golf course in 2012 or 2013. Metroparks denied that request. On October 18, 2013, Salemi made a second request, seeking 11 categories of records primarily dealing with the marketing program for the Metroparks golf courses. Metroparks also denied that request, stating that it was not required to disclose these records because they contained trade secrets or were protected from disclosure by the attorney client privilege.

{¶ 3} Subsequently, Salemi filed this mandamus action in the court of appeals. Metroparks moved to dismiss, arguing that Salemi had failed to bring the action in the name of the state and to verify his complaint with an affidavit as required by R.C. 2731.04 and further asserting that his claims failed on the merits. Rather than ruling on that motion, the court converted it to one for summary judgment and ordered additional briefing.

{¶ 4} At that point, Salemi filed an amended complaint with a corrected caption and an affidavit verifying the facts alleged in the amended complaint, but

the court of appeals struck it from the record for failure to comply with Civ.R. 15(A), because Salemi had not obtained leave from the court or written consent from Metroparks to amend his complaint. Salemi then filed a motion pursuant to Civ.R. 15(A) for leave to file an amended complaint "to cure procedural deficiencies," which Metroparks did not oppose. The court of appeals denied that motion, stating that it would not permit Salemi to "add additional claims to his complaint * * * at this juncture in the proceedings," and continued to accept arguments regarding the merits of the claims in the original complaint.

{¶ 5} In support of its motion for summary judgment, Metroparks submitted two affidavits from Sanaa Julien, its chief marketing officer, who averred that Metroparks collects information from its golf customers and potential customers through a number of sources, e.g., it solicits subscribers for its newsletters and Facebook page, holds contests and special events, conducts surveys, and offers a rewards program for frequent users of its golf courses. It retains this information in a database that has been refined and maintained by Metroparks at considerable expense and effort. Metroparks conducts online marketing campaigns with its customer list and uses it, in conjunction with other information, to create a marketing plan to target existing customers and to expand its customer base. The plan is specific to golfing customers in Northeast Ohio, and the marketing efforts of Metroparks have reduced the amount of tax dollars used to subsidize its golf courses and has led to the generation of revenue.

{¶ 6} Julien also averred that Metroparks only makes its customer list available to seven members of its marketing department. The list is not available to the public or provided to contractual partners of Metroparks, and it instructs its employees to protect the list from disclosure to third parties and has procedures in place to ensure that its information is protected in third party contracts and when public records requests are made. Metroparks has written directives for its employees regarding access to and protection of the information in its customer

database that were issued by in house legal counsel for the purpose of providing legal advice to employees of Metroparks regarding how to protect its trade secrets. These directives are confidential between Metroparks and its legal counsel.

{¶ 7} Salemi moved the court of appeals to strike the Julien affidavits, arguing they failed to comply with Civ.R. 56(E) and contained false information; the court denied that motion. Salemi also filed his own affidavits in opposition to summary judgment averring that Metroparks was allowing two entities, Golfnow and Golf18network, to share names, e-mail addresses, and other personal information of its customers through tee time reservation systems based on statements made by employees of those entities and information Salemi found on the internet.

{¶ 8} The court of appeals granted in part and denied in part the request for a writ of mandamus without conducting the in camera review requested by Salemi. The court divided the 14 categories of requested documents into five groups for analysis and held that the first and second groups, which included records regarding the names and e-mail addresses of customers and Metroparks' golf course marketing plan, were trade secrets that Metroparks did not need to disclose. The court held that Metroparks failed to establish that documents in the third group, which included contracts with private companies, were exempt from disclosure but that the requests as to those documents were overly broad and unreasonable in scope. The court ordered that Metroparks allow Salemi to revise those requests to limit them to a specific time period and stated that any production of documents by Metroparks in response to the revised requests would be "subject to redaction." The fourth group consisted of requests for documents the court of appeals found either did not exist or had already been produced. The fifth group dealt with a request for written directives governing access to and protection of Metroparks' customer list; the court held that the directives were protected by attorney client privilege.

**Law and Analysis**

{¶ 9} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1). Although "[w]e construe the Public Records Act liberally in favor of broad access and resolve any doubt in favor of disclosure of public records," *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6, the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence, *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, paragraph three of the syllabus.

*R.C. 2731.04 requirements*

{¶ 10} As a preliminary matter, we address Salemi's failure to comply with R.C. 2731.04, which provides: "Application for the writ of mandamus must be by petition, in the name of the state on the relation of the person applying, and verified by affidavit."

{¶ 11} Here, Metroparks raised Salemi's failure to bring the action in the name of the state on his relation and to verify the complaint via affidavit. Salemi eventually sought leave to amend his complaint to cure these procedural deficiencies, but the court of appeals denied that motion on the ground that Salemi sought to belatedly add claims to his complaint, which he did not. The ruling of the court of appeals misstates the facts and contravenes both Civ.R. 15(A)'s mandate that courts "shall freely give leave [to amend a pleading] when justice so requires" and this court's liberal position on amendments as explained in *Blankenship v. Blackwell*, 103 Ohio St.3d 567, 2004-Ohio-5596, 817 N.E.2d 382. Nonetheless, Salemi has not appealed the decision denying his motion for leave to amend.

**{¶ 12}** This court has never directly decided whether the requirement that mandamus actions be filed "in the name of the state on the relation of the person applying" is jurisdictional or whether the failure to comply constitutes waivable error. In practice, this court has never treated miscaptioning as a jurisdictional defect. In fact, this court has granted relief in miscaptioned cases. For example, in *State v. Clay*, 136 Ohio St.3d 1489, 2013-Ohio-4140, 994 N.E.2d 461, we granted an alternative writ in a miscaptioned mandamus case.

**{¶ 13}** Because this court consistently treats miscaptioning as a waivable defense, it has become common practice where parties fail to raise the issue simply to correct the error before publication. For example, in case No. 2011-0922, we reversed the appellate court's denial of a writ of mandamus and remanded the case for further proceedings even though the action was filed under the caption *Paul Lane v. City of Pickerington*. The court's judgment entry was issued under the original, defective case caption. However, our opinion added "The State ex rel." to the formal caption, inside square brackets, and the case is now officially cited as *State ex rel. Lane v. Pickerington*, 130 Ohio St.3d 225, 2011-Ohio-5454, 957 N.E.2d 29.

**{¶ 14}** Similarly, in case No. 2006-0714, a petition for a writ of mandamus was filed under the caption *Victoria Morgan v. The City of New Lexington*. This court granted the writ in an opinion recaptioned as [*The State ex rel.*] *Morgan v. City of New Lexington*. The official citation for the case dispenses with the square brackets. 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208. In addition, square brackets were used as a corrective device by this court in the formal caption of *State ex rel. Carr v. Akron*, 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948.

**{¶ 15}** Although Salemi's complaint does not comply with R.C. 2731.04, our jurisprudence implies that the requirements of that statute are not jurisdictional. *Compare Shoop v. State*, 144 Ohio St.3d 374, 2015-Ohio-2068, 43 N.E.3d 432,

¶ 10 (stating that a petition for a writ of mandamus *may* be dismissed for failure to bring the action in the name of the state and concluding that the court of appeals properly dismissed a petition on the merits and based on the captioning error) *with State ex rel. Ohio Democratic Party v. Blackwell*, 111 Ohio St.3d 246, 2006-Ohio-5202, 855 N.E.2d 1188, ¶ 49-50 (indicating that if a court lacks subject matter jurisdiction, a ruling on the merits is advisory and should not issue). Likewise, the statute's requirement that the complaint be verified by affidavit is not jurisdictional. *State ex rel. Madison v. Cotner*, 66 Ohio St.2d 448, 449, 423 N.E.2d 72 (1981) (declining to strike complaint for failure to comply with the verification requirement in R.C. 2731.04).

{¶ 16} Therefore, we consider the merits of this appeal.

*Evidentiary objections*

{¶ 17} Salemi complains that portions of the Julien affidavits contain averments that Julien did not make on personal knowledge or substantiate with documentary evidence and thus do not meet the requirements of Civ.R. 56(E); he also asserts that the affidavits contain false averments. In essence, he seeks review of the denial of the motion to strike.

{¶ 18} Pursuant to Civ.R. 56(E), "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." "However, personal knowledge can be inferred from the nature of the facts in the affidavit and the identity of the affiant." *State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467, ¶ 15, citing *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467, 423 N.E.2d 105 (1981). Here, Julien's personal knowledge about the customer list, marketing plan, and other facts asserted in her affidavits can be inferred from the fact that she is the chief marketing officer for Metroparks.

**{¶ 19}** Civ.R. 56(E) also provides that "[s]worn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit." However, the averments that Salemi claims need to be supported with documentary evidence do not refer to any documents.

**{¶ 20}** Salemi's challenge to the veracity of Julien's averments lacks merit because it is based on his own affidavits, which depend on hearsay statements and on contracts that Salemi claims Metroparks furnished in response to the judgment from which he appeals and that do not appear in the record below. *Tasin v. SIFCO Industries, Inc.*, 50 Ohio St.3d 102, 107, 553 N.E.2d 257 (1990) (affidavit relating statements of others to prove the truth of the matters asserted is hearsay and inadmissible unless an exception applies); *Dzina v. Celebrezze*, 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶ 16 (this court "cannot * * * add matter to the record before us that was not part of the court of appeals' proceedings and then decide the appeal on the basis of the new matter").

**{¶ 21}** Accordingly, we affirm the denial of the motion to strike.

*Trade secrets*

**{¶ 22}** Salemi asserts that the court of appeals erred in holding that the names and e-mail addresses he requested regarding Metroparks customers, i.e., its customer list, constitute trade secrets, because the holding is based on Julien's conclusory averments, Metroparks allows third parties to access its customer information, the customer list lacks economic value because Metroparks previously disclosed over 5,000 customer e-mail addresses to Salemi in response to a 2010 public records request, and Metroparks failed to present expert testimony to establish that the precautions it takes to protect its customer list are standard for its industry in accordance with *State ex rel. Luken v. Corp. for Findlay Mkt. of Cincinnati*, 135 Ohio St.3d 416, 2013-Ohio-1532, 988 N.E.2d 546.

**{¶ 23}** The Public Records Act exempts from disclosure requirements "[r]ecords the release of which is prohibited by state or federal law." R.C.

149.43(A)(1)(v). Trade secrets are exempt from disclosure pursuant to this provision. *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 399, 732 N.E.2d 373 (2000). "Exceptions to disclosure under the Public Records Act are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 23. "A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *Id.*

**{¶ 24}** R.C. 1333.61(D) defines "trade secret" as

> information, including * * * any business information or plans, financial information, or listing of names * * * that satisfies both of the following:
>
>> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>>
>> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

**{¶ 25}** We have articulated the following factors for analyzing a trade secret claim:

> " '(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or

money expended in obtaining and developing the information; and
(6) the amount of time and expense it would take for others to
acquire and duplicate the information.' "

*State ex rel. Luken*, 135 Ohio St.3d 416, 2013-Ohio-1532, 988 N.E.2d 546, at ¶ 17, quoting *State ex rel. Besser* at 399-400, quoting *State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 524-525, 687 N.E.2d 661 (1997); *see also* 4 Restatement of the Law, Torts, Section 757, Comment b (1939).

**{¶ 26}** Customer lists have been held to constitute trade secrets. *Al Minor & Assocs., Inc. v. Martin*, 117 Ohio St.3d 58, 2008-Ohio-292, 881 N.E.2d 850, ¶ 27. However, to be a trade secret, a customer list must contain more than a list of names, when the identity of the customers is "readily ascertainable through ordinary business channels or through classified business or trade directories." *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency*, 88 Ohio St.3d 166, 173, 724 N.E.2d 411 (2000). Rather, it must contain information not generally known to or readily ascertainable by the public. *Id.*, citing *State ex rel. Plain Dealer* at 529.

**{¶ 27}** Applying the above factors here, we conclude that Metroparks' customer list constitutes a trade secret. Regarding the first factor, Metroparks presented evidence by way of the Julien affidavits that the list is not available to the public or provided to its contractual partners. With respect to the second and third factors, Metroparks presented evidence that it limits access to the customer list to only a few employees and has taken measures to protect the list from disclosure to others. Salemi's argument that Metroparks does not protect its customer list depends on contracts that are not in the record of proceedings below and on a misplaced reliance on *State ex rel. Luken*, a public records mandamus case in which a party presented expert testimony to the effect that its precautions for

keeping information secret were standard in its industry but in which this court did not mandate such proof.

{¶ 28} As to the fourth factor, there is evidence that the customer list is of economic value because Metroparks uses it for online marketing and to develop its targeted marking plan and because its marketing efforts have reduced the taxpayer subsidies it requires and have led to the generation of revenue by the golf courses—although Metroparks did not provide specific details on the exact amount of revenue. The list would doubtless have value to Salemi, a competitor of Metroparks, as he could profit from using the list in advertising efforts for his own course. The fact that Metroparks previously disclosed e-mail addresses to Salemi in 2010 is not dispositive of the question whether the current customer list has economic value. Metroparks asserts that its situation has changed considerably since then, in that Metroparks has since hired a marketing officer and now stores the gathered information in programs that are refined and maintained with effort and expense, and Julien's affidavits indicate that since 2012, the information has been kept confidential.

{¶ 29} As to the fifth and sixth factors, Metroparks presented evidence that it expends effort and money to collect the information in its customer list from a number of sources and to organize and store that information. It is reasonable to conclude that others would similarly need to invest time and money to acquire and duplicate the information on the customer list.

{¶ 30} Based on the foregoing, we recognize that Metroparks' customer list derives independent economic value from not being generally known to or readily ascertainable by ordinary means by other persons, such as Salemi, who can obtain economic value from its disclosure or use and that it is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

{¶ 31} Because Metroparks met its burden to show that the requested names and e-mail addresses squarely fall within the public records exception for trade

secrets, the court of appeals correctly denied Salemi's request for a writ of mandamus with regard to those records.

*In camera review*

{¶ 32} Salemi maintains that the court of appeals should have reviewed the records he requested in camera to determine whether they were trade secrets or protected by attorney client privilege. Specifically, he asserts that had the court of appeals reviewed the third party contracts he requested, the contracts would have corroborated his claim that Metroparks had waived its right to keep its trade secrets confidential. He asserts that an in camera review of the directives governing access to and protection of the customer list would have permitted the court to make a determination as to whether the directives were legal advice or "simply a business procedure to hire or implement equipment or software to protect information." Salemi also complains that the court did not determine whether the directives had been implemented or "were an illegal act used to suppress the public's right to records."

{¶ 33} This court "has consistently required an in camera inspection of records before determining whether the records are excepted from disclosure" pursuant to the Public Records Act. *State ex rel. Lanham*, 135 Ohio St.3d 191, 2013-Ohio-199, 985 N.E.2d 467, at ¶ 22. However, a court need not conduct an in camera inspection where "the matters contained in an allegedly public record are not in dispute, making only its status under the public records law an issue." *State ex rel. Renfro v. Cuyahoga Cty. Dept. of Human Services*, 54 Ohio St.3d 25, 560 N.E.2d 230 (1990), fn. 1.

{¶ 34} The matters contained in the records which the court of appeals held were either trade secrets or privileged are not in dispute—the records contain names and e-mail addresses, the marketing plan for Metroparks, and directives on access to and protection of its customer list. The court did not need to conduct an in camera review to determine the status of those records under the Public Records Act.

Salemi cites no authority for the position that the court had an obligation to conduct an in camera review of each contract implicated by his overly broad and unreasonable request for third party contracts to see if they contained information that might support Salemi's waiver argument. Regarding the directives, even if they could be characterized as "business procedures," that fact would not contradict Julien's averment that they were issued by in house counsel for the purpose of providing legal advice to employees of Metroparks. Also, a review of the directives themselves would not reveal whether they had been implemented or used to illegally suppress the rights of others.

{¶ 35} For these reasons, we reject the contention that the court of appeals erred by not conducting an in camera review.

### Motion to Show Cause for Contempt of Court

{¶ 36} Salemi has also filed a motion asking this court to order Metroparks and its attorneys to show cause as to why they should not be held in contempt of court for submitting false affidavits from Julien and not releasing all of the records the court of appeals ordered Metroparks to release. However, Salemi failed to demonstrate that the statements in these affidavits were false, and the correspondence from Metroparks which Salemi attached to his motion does not display an unwillingness on the part of Metroparks to produce records ordered released by the court of appeals. Accordingly, this motion is not well taken, and it is denied.

### Conclusion

{¶ 37} For the foregoing reasons, we affirm the judgment of the court of appeals and deny the motion for an order to show cause.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

LANZINGER, J., concurs in judgment only.

_____

Joseph Salemi, pro se.

Thompson Hine, L.L.P., Jeffery R. Appelbaum, and Anthony J. Rospert; and Rosalina M. Fini, for appellee.

_____