[Cite as *Wigton v. Univ. of Cincinnati Physicians, Inc.*, 2021-Ohio-3576.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| DR. MICHAEL D. WIGTON, | : | APPEAL NO. C-210305 | |
| | | TRIAL NO. A-2004481 | |
| Plaintiff-Appellant, | : | | |
| | | | |
| vs. | : | *O P I N I O N.* | |
| | : | | |
| UNIVERSITY OF CINCINNATI PHYSICIANS, INC., | : | | |
| | : | | |
| Defendant-Appellee. | : | | |


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  October 6, 2021


*Eberly McMahon Copetas LLC, Theodore C. Copetas* and *David A. Eberly,* for Plaintiff-Appellant,

*Frost Brown Todd LLC, Deborah S. Adams* and *Simon Y. Svirnovskiy,* for Defendant-Appellee.

**BERGERON, Judge.**

{¶1}  This noncompete dispute arises between a Cincinnati-based hand surgeon, plaintiff-appellant Dr. Michael Wigton, and his former employer, defendant-appellee University of Cincinnati Physicians, Inc. ("UCP").  Although this case poses questions about the enforceability of Dr. Wigton's noncompete provision under Ohio law, the issue we confront today is whether the trial court applied the appropriate standard to the parties' cross-motions for summary judgment.  Given the procedural posture of this case, the trial court should have applied the familiar summary judgment standard, but it instead improperly elevated the burden on Dr. Wigton, requiring him to prove entitlement to relief by clear and convincing evidence.  We accordingly reverse the trial court's judgment and remand for further proceedings.

I.

{¶2}  Fresh out of medical school, Dr. Wigton entered an employment agreement with UCP in January 2016, which contained a noncompete provision.  The noncompete prevents Dr. Wigton from practicing medicine, performing procedures, or rendering professional services in his specialty within ten miles of any location where he worked within the preceding 12 months.  The noncompete lasts for 18 months following the termination of his employment.  After four years with UCP, Dr. Wigton left for the greener pastures of Beacon Orthopedics and Sports Medicine ("Beacon").

{¶3}  Seeking clarity on the status of his noncompete, a few months before Dr. Wigton would begin at Beacon, he filed suit against UCP for a declaratory judgment, but he also sought various forms of relief, including a preliminary injunction, a permanent injunction, and damages.  Although the complaint requested injunctive relief, Dr. Wigton never filed a motion for a preliminary or permanent injunction (atypical for a noncompete case, and the source of later procedural confusion).  Instead, he moved for summary

2

judgment, prompting UCP to respond with its own motion for summary judgment (although UCP filtered its analysis through the preliminary injunction standard, rather than summary judgment). The trial court granted UCP's motion, analyzing this matter under the preliminary injunction standard, which obligated Dr. Wigton to prove his claim by clear and convincing evidence. After evaluating the record, the trial court granted UCP's motion for summary judgment and denied Dr. Wigton's, prompting the instant appeal.

{¶4} On appeal, Dr. Wigton presents three assignments of error challenging the denial of his motion for summary judgment, the entry of summary judgment for UCP, and the trial court's refusal to modify his noncompete.

II.

{¶5} We begin with Dr. Wigton's first and third assignments of error, which we discuss together for convenience's sake. Dr. Wigton's first assignment of error challenges the denial of his motion for summary judgment, and his third assignment of error maintains that, when considering UCP's motion, the trial court failed to construe the facts in the light most favorable to himself.

{¶6} Generally, a noncompete is enforceable only if the restraint "is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public." *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 26, 325 N.E.2d 544 (1975). We can consider nine factors as a part of this inquiry:

(1) whether the agreement contains time and space limitations; (2) whether the employee is the sole contact with the customer; (3) whether the employee has confidential information or trade secrets; (4) whether the covenant seeks to limit only unfair competition or is designed more broadly to eliminate ordinary competition; (5) whether the agreement seeks to stifle the employee's inherent skill and experience; (6) whether the benefit to the

3

employer is disproportional to the detriment to the employee; (7) whether the agreement bars the employee's sole means of support; (8) whether the skills that the agreement seeks to restrain were actually developed during the employment; and (9) whether the forbidden employment is merely incidental to the main employment.

*Id.* at 25.

{¶7}   Given the stakes involved concerning access to medical care, Ohio courts review noncompetes for physicians with a critical lens: "Restrictive covenants are disfavored in the law, and '[t]his measure of disfavor is especially acute concerning restrictive covenants among physicians, which affect the public interest to a much greater degree.' " *Castillo-Sang v. Christ Hosp. Cardiovascular Assoc., LLC*, 1st Dist. Hamilton No. C-200072, 2020-Ohio-6865, ¶ 19, quoting *Ohio Urology, Inc. v. Poll*, 72 Ohio App.3d 446, 452-453, 594 N.E.2d 1027 (10th Dist.1991).   Noncompete restraints on physicians are, therefore, "strictly construed in favor of professional mobility and access to medical care and facilities." *Id.*  Nevertheless, "covenants not to compete in the medical profession are not per se unenforceable, and will be upheld if they are reasonable." *Id.*  That said, we only enforce noncompete restraints on physicians "to the extent necessary to protect an employer's legitimate interests; if there is no legitimate interest to be protected, the noncompete is unreasonable." *Id.*

{¶8}   This is a peculiar noncompete case where the physician was not attempting to "steal" patients or misappropriate trade secrets.  At this stage, it is undisputed that Dr. Wigton was engaged in no effort to steer patients from UCP to Beacon (and the record confirmed the implausibility of any such aspirations given the nature of his practice) and Dr. Wigton p0ssessed no confidential information of UCP that he could exploit against UCP, as the trial court confirmed: "the record does not establish that Dr. Wigton was privy to

4

protected business information that he could use against UCP while at Beacon." *See id.* at ¶ 31 (emphasizing the hospital's "scant evidence in the record which would support its contention that Castillo-Sang possessed trade secrets or other protected confidential information"). Generally, noncompete restraints are only enforceable when the employee possesses protected business information (such as trade secrets or customer lists) that she can use against her former employer. *See Brentlinger Ents. v. Curran*, 141 Ohio App.3d 640, 649, 752 N.E.2d 994 (10th Dist.2001) ("Generally, the only business interests which have been deemed sufficient to justify enforcement of a noncompete clause * * * are preventing the disclosure of the former employer's trade secrets or the use of the former employer's proprietary customer information to solicit the former employer's customers."). Indeed, this is why noncompete caselaw focuses on preventing *unfair* competition, not simply ordinary competition. *Castillo-Sang* at ¶ 23, 27 ("The prevention of ordinary competition is not a legitimate business interest that can be protected by a restrictive covenant * * * Ohio courts have refused to enforce covenants not to compete against physicians where there is no legitimate business interest to protect.").

{¶9} From that jumping off point, however, the trial court obligated Dr. Wigton to prove his claim by clear and convincing evidence, ultimately determining that he fell short. It concluded that UCP's position as a nonprofit academic hospital provided a legitimate business interest in deterring defections like Dr. Wigton's and that UCP invested in Dr. Wigton's training. We take no position on the merits of these conclusions because they were assessed under an incorrect standard, but we do point out that in considering a physician's training, a court should not simply evaluate whether a doctor received training (as all doctors do) but whether the doctor's "expertise was increased * * * more than would have been through experience as [a physician] in solo practice," *id.* at ¶ 28, and/or whether the training provided by the hospital facilitates some type of unfair competition.

{¶10} On the question of the appropriate standard, in *Castillo-Sang*, we recently held that a party seeking to invalidate a noncompete restriction must prove the unreasonableness of the restriction by clear and convincing evidence—but this arose in the context of injunctive relief. *Castillo-Sang*, 1st Dist. Hamilton No. C-200072, 2020-Ohio-6865, at ¶ 16. When a party seeks a preliminary injunction or permanent injunction, they "must ordinarily prove the required elements by clear and convincing evidence." *Procter & Gamble Co. v. Stoneham*, 140 Ohio App.3d 260, 267-268, 747 N.E.2d 268 (1st Dist.2000), *cause dismissed*, 91 Ohio St.3d 1478, 744 N.E.2d 775 (2001).

{¶11} But Dr. Wigton bypassed the injunction route pursued in *Castillo-Sang* and filed a motion for summary judgment on his request for a declaratory judgment. Although it may be uncommon for parties to seek summary judgment in a noncompete setting without a concomitant injunction motion, this represents an appropriate method of resolving a complaint for a declaratory judgment, just as in any contract dispute. Civ.R. 56 ("A party seeking * * * a declaratory judgment may move with or without supporting affidavits for a summary judgment in the party's favor * * * ."); *see Stover v. State Farm Ins. Co.*, 127 Ohio App.3d 590, 593-595, 713 N.E.2d 505 (3d Dist.1998), *cause dismissed,* 85 Ohio St.3d 1454, 708 N.E.2d 1008 (1999) (reversing denial of summary judgment on complaint for declaratory judgment, and ordering trial court to enter summary judgment for the appellant); *Fahncke v. Fahncke*, 2020-Ohio-433, 151 N.E.3d 1130, ¶ 13 (3d Dist.), *appeal not allowed,* 159 Ohio St.3d 1407, 2020-Ohio-3174, 146 N.E.3d 588 (reviewing de novo motion for summary judgment on complaint for declaratory judgment).

{¶12} Under the summary judgment standard, Dr. Wigton and UCP are only entitled to summary judgment if "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears after construing the evidence most strongly in the nonmoving party's favor that reasonable minds can come

to but one conclusion." *State ex rel. AWMS Water Solutions, L.L.C. v. Mertz*, 162 Ohio St.3d 400, 2020-Ohio-5482, 165 N.E.3d 1167, ¶ 23. When assessing cross-motions for summary judgment "[e]ach motion must be considered individually and separately, construing the evidence most strongly in favor of the party against whom the motion under consideration was filed. * * * If neither movant is so entitled, both motions must be denied." *United States Fid. & Guar. Co. v. Rains*, 1st Dist. Hamilton No. C-790073, 1980 WL 352777, *1 (Apr. 16, 1980), citing *Williams v. First United Church of Christ*, 37 Ohio St. 2d 150, 151-152, 309 N.E.2d 924 (1974).

{¶13} The clear and convincing standard has no place in this analysis because it presupposes a weighing of the evidence, which a trial court should not undertake at summary judgment. By engaging in the injunctive relief analysis, the trial court placed too heavy a thumb on the scales by requiring Dr. Wigton to carry his burden by clear and convincing evidence. *See Murray v. Accounting Ctr. & Tax Servs., Inc.*, 178 Ohio App.3d 432, 2008-Ohio-5289, 898 N.E.2d 89, ¶ 14-19 (6th Dist.) (applying ordinary summary judgment standard in a noncompete dispute where the parties filed cross-motions for summary judgment on the employee's complaint for a declaratory judgment).

* * *

{¶14} Accordingly, we sustain Dr. Wigton's first assignment of error—insofar as it challenges the application of the preliminary injunction standard here—and third assignment of error in full. We determine that the remainder of Dr. Wigton's first assignment of error, asserting that UCP has no legitimate business interest in his noncompete, is premature and therefore moot. We also determine that Dr. Wigton's second assignment of error, challenging the trial court's refusal to modify his noncompete, is rendered moot by our holding here. On remand, the trial court should consider the *Raimonde* analysis as applied in the context of physician noncompetes and evaluate the

7

record at hand under the summary judgment standard. We remand for further proceedings consistent with this opinion.

Judgment reversed and cause remanded.

**ZAYAS, P. J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion