[Cite as *Kross Acquisition Co., L.L.C. v. Groundworks Ohio, L.L.C.*, 2024-Ohio-592.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| KROSS ACQUISITION CO., LLC, | : | APPEAL NO. C-230272 |
| | | TRIAL NO. A-2201033 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| GROUNDWORKS OHIO LLC, et al., | : | |
| Defendants, | : | |
| and | : | |
| ROGER KIEF, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 16, 2024

*Yocum & Neuroth, LLC, Thomas R. Yocum, Cors & Bassett, LLC*, and *Patrick M. O'Neill*, for Plaintiff-Appellant,

*Moore & Van Allen PLLC, Sarah Negus, Paul J. Peralta, Caroline F. Savini, Eberly McMahon Copetas LLC*, and *David A. Eberly*, for Defendant-Appellee.

**CROUSE, Judge.**

**{¶1}** Plaintiff-appellant Kross Acquisition Co., LLC, ("Kross") is a basement waterproofing contractor. Kross brought this action to enforce a "Confidentiality and Non-Competition Agreement" (the "NCA") against its former salesperson, defendant-appellee Roger Kief. In contravention of the terms of the NCA, Kief left Kross to work in a virtually identical sales position for competitor Groundworks Ohio, LLC, ("Groundworks"). The trial court granted summary judgment in favor of Kief on the basis that the NCA was unenforceable. For the following reasons, we affirm the judgment of the trial court.

## I. Procedural and Factual History

**{¶2}** Kross is a renovation contractor that specializes in foundation and crawl space waterproofing, repair, and related work. Kross provides service in southwestern Ohio, southeastern Indiana, and northern and eastern Kentucky. Groundworks is a direct competitor of Kross that is engaged in substantially the same business. Through its various affiliated companies, Groundworks serves the entire state of Ohio, as well as substantial portions of Kentucky, Indiana, and many other states.

**{¶3}** Kief began working for Kross as a salesperson and estimator in July 2012. In May 2017, Kief signed the NCA with Kross. The NCA prohibits Kief from "disclos[ing] any of such confidential information, trade secrets or other proprietary information" belonging to Kross. The NCA also prohibits Kief from working anywhere in Ohio or Kentucky "directly or indirectly" for any company engaged in "the business of inspections, estimating/pricing, and repair work relating to basement waterproofing, foundation repair, crawl space vapor barrier installation, other work relating to wet, leaky basements, moisture problems in crawl spaces, mold, bowed,

cracked, settling or sinking foundation walls or other business engaged in by" Kross for two years following the end of Kief's employment with Kross.

{¶4}   In February 2022, Groundworks offered Kief a virtually identical position, with a start date of March 2022. In its offer letter, Groundworks acknowledged that Kief was subject to the NCA, but stated its belief that the NCA was unenforceable and offered to cover any legal expenses necessary to challenge the NCA.

{¶5}   In late March 2022, Kross filed the instant suit against Groundworks and Kief. In its first amended complaint, Kross sought injunctive relief and damages against Groundworks and Kief. Kross claimed breach of contract, tortious interference with business relations, violation of the Ohio Trade Secret Act, and civil conspiracy against Kief. Kross also claimed tortious interference with contractual relations, violation of the Ohio Trade Secret Act, and civil conspiracy against Groundworks. In February 2023, Kross voluntarily dismissed its claims against Groundworks without prejudice.

{¶6}   Kross alleges that Kief attended a trade show on its behalf during the waning days of his employment with Kross in early March 2022. Kross alleges that Kief appropriated potential business contacts from that trade show for his use after starting work for Groundworks. Kross also alleges that Kief copied "hundreds of files" containing sales proposals from Kross's computer system to a thumbdrive. Kross alleges that Kief has used the information copied to solicit Kross's customers and potential customers.

{¶7}   Kross filed a motion for partial summary judgment as to the injunctive relief sought, as well as a finding of liability against Groundworks and Kief. Kief filed his own motion for summary judgment asking for judgment in his favor on all claims.

Following a hearing, the trial court granted summary judgment in favor of Kief and denied Kross's motion.

**{¶8}** This appeal timely followed.

### II. Analysis

**{¶9}** In a single assignment of error, Kross argues that the trial court erred in granting summary judgment in favor of Kief and denying its motion for partial summary judgment. Within its assignment of error, Kross presents several issues for our review. Specifically, Kross asks us to review the trial court's findings that the NCA is unenforceable, that Kross's trade-secrets claim fails as a matter of law, and that the NCA's liquidated-damages provision is unenforceable.

**{¶10}** Because the appeal challenges the court's decision on a motion for summary judgment, this court's review is de novo. *Environmental Solutions & Innovations, Inc. v. Edge Eng. & Science, LLC*, 1st Dist. Hamilton No. C-220634, 2023-Ohio-2605, ¶ 6. Under Civ.R. 56(C), summary judgment is appropriate when the moving party establishes (1) there are no genuine issues of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) construing the evidence most strongly in favor of the nonmoving party, "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made." *Id.*, quoting Civ.R. 56(C).

### A. Validity of the NCA

**{¶11}** The parties agree as to the existence of the NCA and its terms. The bedrock case for evaluating the enforceability of noncompetition agreements is *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544 (1975).

**{¶12}** A noncompetition agreement "is enforceable only if the restraint 'is no

4

greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public.' " *Wigton v. Univ. of Cincinnati Physicians, Inc.*, 2021-Ohio-3576, 179 N.E.3d 241, ¶ 6 (1st Dist.), quoting *Raimonde* at 26. Cases involving noncompetition agreements must be decided on the facts of the specific case. *Raimonde* at 25. Courts consider the following factors in determining enforceability:

> (1) whether the agreement contains time and space limitations; (2) whether the employee is the sole contact with the customer; (3) whether the employee has confidential information or trade secrets; (4) whether the covenant seeks to limit only unfair competition or is designed more broadly to eliminate ordinary competition; (5) whether the agreement seeks to stifle the employee's inherent skill and experience; (6) whether the benefit to the employer is disproportional to the detriment to the employee; (7) whether the agreement bars the employee's sole means of support; (8) whether the skills that the agreement seeks to restrain were actually developed during the employment; and (9) whether the forbidden employment is merely incidental to the main employment.

*Wigton* at ¶ 6, citing *Raimonde* at 25.

{¶13} Kief's NCA specifies that Kief is restricted from working in the specified field for two years and throughout Ohio and Kentucky. However, the evidence before the trial court showed that Kross's service area covers only a portion of southwestern Ohio and about half of Kentucky, as well as a small portion of Indiana. And even though Kross services areas of Ohio, Kentucky, and Indiana, the parties do not dispute that the areas where Kief actually worked with clients is only a portion of that service

area.

**{¶14}** At the summary-judgment hearing, and again at oral argument on appeal, counsel for Kross admitted that the geographic and temporal limitations exceed what is necessary to protect Kross's legitimate business interests. We agree. Accordingly, the NCA as written is unenforceable.

**{¶15}** However, that the NCA as written is unenforceable does not end our analysis. Kross argues that the trial court should have modified or amended the scope of the NCA rather than finding it unenforceable. In support of its argument that modification of the NCA is mandatory, Kross relies on the syllabus in *Raimonde* which states, "A [covenant] not to compete which imposes unreasonable restrictions upon an employee will be enforced to the extent necessary to protect an employer's legitimate interests." *Raimonde*, 42 Ohio St.2d 21, 325 N.E.2d 544, at paragraph one of the syllabus.

**{¶16}** Despite this seemingly mandatory language in the *Raimonde* syllabus, the court stated later in the opinion, "[T]his court holds, for the first time, that a trial court *may* enforce a covenant 'to the extent necessary to protect an employer's legitimate interests * * *.' " (Emphasis added.) *Id*. at 28. In *Professional Investigations & Consulting Agency, Inc. v. Kingsland*, 69 Ohio App.3d 753, 760, 591 N.E.2d 1265 (10th Dist.1990), the Tenth District held, "The use of permissive language in the *Raimonde* decision implies that modification is within the discretion of the trial court." *See also Facility Servs. & Sys., Inc. v. Vaiden*, 8th Dist. Cuyahoga No. 86904, 2006-Ohio-2895, ¶ 54 ("[T]he trial court was not mandated to modify the provisions to render them enforceable."); *LCP Holding Co. v. Taylor*, 158 Ohio App.3d 546, 2004-Ohio-5324, 817 N.E.2d 439, ¶ 61 (11th Dist.) ("Although a trial court may modify

6

an unreasonable restrictive covenant to make it reasonable and enforceable, it is not required to do so.").

**{¶17}** We agree that it is within a trial court's discretion to modify a noncompetition agreement, and so we review its decision not to modify such an agreement for an abuse of discretion. "Abuse of discretion occurs when 'a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority.' " *State v. Austin*, 1st Dist. Hamilton Nos. C-210140 and C-210141, 2021-Ohio-3608, ¶ 5, quoting *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶18}** In the case at bar, the parties dispute what a reasonable geographic restriction would look like: whether Kross can protect its entire service area, or whether the agreement should cover only the areas where Kief personally visited clients. Further, Kross could not state with certainty what a reasonable temporal limitation would be. In a deposition of Kross's co-owner and Civ.R. 30(B)(5) representative, Robert Miles, Miles agreed that an 18-month restriction would be just as effective as the 24-month restriction contained in the NCA. When asked if a 12-month restriction would be just as effective, Miles answered, "Maybe, maybe not."

**{¶19}** Additionally, the NCA prohibited Kief from engaging in a broad scope of potential employment. The NCA prohibited Kief from working "directly or indirectly" for any company engaged in "the business of inspections, estimating/pricing, and repair work relating to basement waterproofing, foundation repair, crawl space vapor barrier installation, other work relating to wet, leaky

7

basements, moisture problems in crawl spaces, mold, bowed, cracked, settling or sinking foundation walls or other business engaged in by" Kross. Kross argued that the legitimate business interests to be protected were its customer lists and pricing methods. While we agree that such information can constitute legitimate business interests that may be protected by a noncompetition agreement, the scope of work prohibited to Kief exceeds what is necessary to protect those interests. In particular, the restriction on working "directly or indirectly" for any competing company, and apparently in any role, does not bear a sufficiently direct relationship to the interests Kross seeks to protect.

{¶20} With so many factors and considerations necessary to rewrite the NCA to comport with *Raimonde*'s rule of reasonableness, we hold that the trial court did not abuse its discretion by refusing to modify Kief's NCA. *See Professional Investigations*, 69 Ohio App.3d at 760, 591 N.E.2d 1265 ("To bring [plaintiff's] non-competition clause into compliance with the rule of reasonableness, the trial court could not easily modify existing provisions but might be required to rewrite the entire covenant. * * * We have found no case which states that a trial court must totally rewrite a provision in order to carry out its discretionary powers."); *S & S, Inc. v. Kuret*, 8th Dist. Cuyahoga Nos. 62478 and 63042, 1993 Ohio App. LEXIS 2442, 9 (May 13, 1993) ("It is not mandatory for this court to modify the covenant to make it a reasonable restraint and it is not an abuse of discretion for us to decline to modify the time and space restrictions of the covenant as it is unenforceable on its face.").

### B. Kross's Trade-Secrets Claim

{¶21} Kross argues that the trial court erred by granting summary judgment on its trade-secrets claim because there are genuine issues of material fact that

8

preclude a decision on summary judgment.

**{¶22}** Under the Ohio Uniform Trade Secrets Act, R.C. 1333.61 to 1333.69, misappropriation of a trade secret may be prevented by injunction, R.C. 1333.62(A), or compensated by recovery of damages, R.C. 1333.63(A).

**{¶23}** "Trade secret" means:

information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. 1333.61(D).

**{¶24}** To prevail on a claim of misappropriation of a trade secret, the plaintiff must "show by a preponderance of the evidence: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Tomaydo-Tomahhdo L.L.C. v. Vozary*, 2017-Ohio-4292, 82 N.E.3d 1180, ¶ 9 (8th Dist.). In analyzing such a claim, the court must consider:

9

(1) The extent to which the information is known outside the business;
(2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Id.* at ¶ 11, quoting *Salemi v. Cleveland Metroparks*, 145 Ohio St.3d 408, 2016-Ohio-1192, 49 N.E.3d 1296, ¶ 25.

{**¶25**} Kross alleges that Kief (1) retained and used customer lists to solicit Kross customers while working for Groundworks and (2) downloaded customer proposals from Kross's computer system in the days prior to his resignation and used those proposals in soliciting Kross customers.

{**¶26**} The Ohio Supreme Court has held that:

Customer lists have been held to constitute trade secrets. However, to be a trade secret, a customer list must contain more than a list of names, when the identity of the customers is "readily ascertainable through ordinary business channels or through classified business or trade directories." Rather, it must contain information not generally known to or readily ascertainable by the public.

(Citations omitted.) *Salemi* at ¶ 26.

{**¶27**} In the case at bar, Kross does not allege that Kief downloaded a master

customer list from its computer database. Rather, Kross alleges that Kief retained customer contact information on his personal mobile phone after he resigned from his employment. The record shows that Kross was aware that Kief used his personal phone for company business, even though he was provided with a company phone and directed on multiple occasions that he should only use the company-supplied phone for conducting business. Kief was not subject to discipline for his consistent refusal to use the company phone, as directed. Kross also did not undertake any efforts, despite this knowledge, to ensure that Kief removed customer contact information from his phone following his resignation.

**{¶28}** Because of the limited nature of the customer contact information Kross alleges Kief retained, and because of the lack of effort put forth by Kross to maintain confidentiality of the customer contact information stored on Kief's phone, we hold that there is no genuine issue of material fact that would support Kross's claim that the customer contact information retained by Kief constitutes a trade secret.

**{¶29}** Kross also alleges that Kief misappropriated the customer proposals that Kief downloaded in the days prior to his resignation. Kief argues that the customer proposals cannot constitute trade secrets because the proposals are given to customers with no requirement that the customers keep the proposals confidential. On the contrary, customers are encouraged to share the proposals freely with competitors when comparing prices. Because Kross does not undertake efforts to keep the customer proposals confidential, the customer proposals cannot be trade secrets.

**{¶30}** Because Kross has failed to show that the customer contact information or customer proposals constitute trade secrets, the trial court did not err in granting summary judgment in favor of Kief on Kross's trade-secrets claim.

### C. *Liquidated Damages*

**{¶31}** Finally, Kross argues that the trial court erred in holding that Kross cannot recover damages under the NCA's liquidated-damages provision because Kross failed to show that it suffered any actual damages. Because we have held that the NCA is unenforceable, Kross is not entitled to seek damages under the NCA's liquidated-damages provision.

### III. Conclusion

**{¶32}** Kross's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**BOCK, P.J.,** and **KINSLEY, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.