[Cite as *Bank of New York Mellon v. Workman*, 2020-Ohio-3330.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| THE BANK OF NEW YORK MELLON f.k.a. THE BANK OF NEW YORK, AS TRUSTEE FOR ALTERNATIVE LOAN TRUST 2004-28CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-28CB, | : : : : | **O P I N I O N** |
| | : | **CASE NO. 2019-L-134** |
| Plaintiff-Appellee, | : | |
| - vs - | : | |
| SUSAN D. WORKMAN, et al., | : | |
| Defendant-Appellant. | : | |
| | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2014 CF 001548.

Judgment: Affirmed.

*Nathan B. Blaske* and *Shannon O'Connell Egan*, Dinsmore & Shohl LLP, 255 East Fifth Street, Suite 1900, Cincinnati, OH 45202; and *Jeffrey J. Hanneken* and *Kellie A. Kulka,* Graydon, Head, & Ritchey, LLP, 312 Walnut Street, Suite 1800, Cincinnati, OH 45202 (For Plaintiff-Appellee).

*Marc E. Dann* and *William C. Behrens,* Dann Law, P.O. Box 6031040, Cleveland, OH 44103 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Susan Workman, appeals the September 30, 2019 Judgment Entry of the Lake County Court of Common Pleas adopting the Magistrate's Decision and foreclosing on certain property. For the reasons discussed herein, we affirm.

{¶2}    Ms. Workman owns a certain parcel of land in Lake County, Ohio, Parcel No. 28A-045F-00-029-0 (the "Property").  On October 28, 2004, Ms. Workman entered into a mortgage loan (the "Mortgage Loan") with Countrywide Home Loans, Inc. in the amount of $99,680.00, as evidenced by a certain note (the "Note"), and secured by the Property, as evidenced in a mortgage (the "Mortgage").  Subsequently, the Note was endorsed in blank; the Mortgage was assigned to appellee, Bank of New York Mellon fka The Bank of New York, as Trustee for Alternative Loan Trust 2004-28CB, Mortgage Pass-Through Certificates Series 2004-23CB ("BONYM").

{¶3}    The Bank of America has been the master servicer of the Mortgage Loan throughout the entirety of the life of the Mortgage Loan, though various entities have acted as sub-servicers.  Of particular relevance to this appeal, effective August 2015 and throughout trial, NewRez dba Shellpoint Mortgage Servicing ("Shellpoint") was the sub-servicer, replacing the prior sub-servicer, Ocwen Loan Servicing, LLC ("Ocwen").

{¶4}    In 2005, Ms. Workman defaulted on the Mortgage Loan, resulting in the Lake County Court of Common Pleas entering judgment in foreclosure against her in March 2007 (the "2007 Judgment").  Shortly thereafter, she filed for bankruptcy and avoided the sale of her home.  She was discharged from bankruptcy in December 2011.  The 2007 Judgment was not vacated by the Lake County Court of Common Pleas until April 17, 2013.

{¶5}    In 2012, Ms. Workman again defaulted on the Mortgage Loan.  Ocwen sent a notice of default on October 16, 2012, and in August 2014, BONYM initiated the underlying action in foreclosure.  As Ms. Workman had obtained a discharge of her

2

obligations under the United States Bankruptcy Code, the foreclosure action was brought in rem, and sought no personal or money judgment.

{¶6} The parties proceeded to a bench trial before the magistrate on September 4, 2019. In his September 30, 2019 decision, the Magistrate specifically found that BONYM had established by clear and convincing evidence that it was the holder of the Note and Mortgage, and was prior to the filing of the complaint; BONYM was entitled to enforce the Mortgage Loan; Ms. Workman was in default; BONYM complied with all conditions precedent; the amount due and owing to BONYM is $87,166.20, plus interest, taxes, and fees; and BONYM was entitled to have the equity of redemption of Ms. Workman foreclosed. The trial court adopted the Magistrate's decision the same day.

{¶7} Ms. Workman timely filed objections to the Magistrate's findings and subsequently supplemented them upon receipt of the trial transcript. Before the court ruled on those objections, Ms. Workman filed a notice of appeal in this court to preserve her right to appeal. This court remanded the case to the trial court to rule on the objections, which it overruled on December 20, 2019. It is from this decision that Ms. Workman now appeals, assigning five errors for our review. The first states:

{¶8} The trial court erred by improperly considering hearsay evidence in Plaintiff's trial exhibits E and F.

{¶9} "This court has previously held that a de novo standard of review applies to determine whether evidence was inadmissible hearsay." *State v. Doak*, 11th Dist. Portage No. 2018-P-0022, 2020-Ohio-66, ¶67, citing *Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶23.

{¶10} There is no dispute that Shellpoint began servicing the Mortgage Loan in August 2015. At trial, BONYM entered into evidence, inter alia, Plaintiff's Exhibit E, the

3

loan history summary, and Plaintiff's Exhibit F, the notice of default letter dated October 16, 2012. Exhibit E contains a summary of the loan history both before and after Shellpoint began servicing the loan on August 15, 2015. Exhibit F, the notice of default, was created and sent by Ocwen, the servicer at the time of default. At trial, BONYM called Ms. Jean Knowles, a paralegal at Shellpoint, to testify as to these records. Because on cross-examination Ms. Knowles admitted she had no knowledge of Ocwen's business-records practices or the circumstance surrounding Ocwen's creation of these records, Ms. Workman argues that Ms. Knowles' testimony was insufficient to lay a foundation for the admission of these two exhibits under the "business records" hearsay exception found in Evid.R 803(6), and thus, the trial court should have excluded these exhibits as hearsay.

{¶11} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible unless it falls within an exception in Evid.R. 803. Evid.R. 802. Evid.R. 803(6) provides an exception for:

{¶12} [a] memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * *

{¶13} "In other words, Evid.R. 803(6) excepts from the hearsay rule records kept in the course of a regularly conducted business activity if it was the regular practice of that business to make such records, and those records were made by or from information

4

transmitted by a person with knowledge." *Ohio Receivables, L.L.C. v. Purola*, 11th Dist. Lake No. 2012-L-092, 2013-Ohio-5806, ¶23, citing Evid.R. 803(6).

{¶14} BONYM argues that Ms. Knowles' testimony was sufficient to lay the foundation for Exhibits E and F as admissible under the adoptive business records doctrine, which this court implicitly applied in *Purola*. In *Purola,* the creditor sought the admission, under the business records hearsay exception, of certain documents and a related affidavit to establish the transfer of the account to the lender. The borrower argued that because the lender did not create the records it sought to admit, and the affidavit did not identify the source of the information or how it created the documents, the lender did not lay the proper foundation for the documents to fall within the business-records exception to the hearsay rule. This court disagreed.

{¶15} This court noted that Evid.R. 803(6) is substantially similar to Fed.R.Evid. 803(6) and found federal circuit courts case law to be instructive on this matter. "'A number of circuit courts have held that exhibits can be admitted as business records of an entity, even when that entity was not the maker of those records; provided that the other requirements of Rule 803(6) are met, and the circumstances indicate that the records are trustworthy.'" *Purola, supra,* at ¶24, quoting *Great Seneca Financial v. Felty*, 170 Ohio App.3d 737, 2006–Ohio–6618, ¶14 (1st Dist.). "Furthermore, '[r]ecords need not be actually prepared by the business offering them if they are received, maintained, and relied upon in the ordinary course of business. If the document is originally created by another entity, the creator need not testify if the document is incorporated into the business records of the testifying entity.'" *Purola, supra,* at ¶25, quoting *Shawnee*

*Associates, LP v. Village of Shawnee Hills*, 5th Dist. Delaware No. 09-CAE-05 0051, 2010-Ohio-1183, ¶50.

{¶16} This court ultimately found the affidavit was sufficient to lay the foundation as business records because "although Ohio Receivables did not actually prepare the records being offered, they were 'received, maintained, and relied upon in the ordinary course of business.'" *Purola, supra,* at ¶26 quoting *Shawnee, supra,* at ¶50. Further, the affidavit attested that the "testimony of the affiant is based on 'information and records submitted and provided as a result of the purchase of [Purola's] debt and warranted and represented to be true and accurate' * * * [and] describes in detail how Ohio Receivables received the documents, incorporated them into its business records, and relied on them in conducting its business." *Purola, supra.*

{¶17} Ms. Workman likens this case to *Estie Invest. Co. v. Braff*, 11th Dist. Lake No. 2017-L-172, 2018-Ohio-4378. In *Estie,* a landlord brought suit against a former tenant for failing to care for the premises. The landlord did not enter into evidence an itemized list of the repairs necessary as required to support his claim, but only generalized the expenses. When questioned on direct examination, the landlord estimated a $2,500 cost to repair the carpet, based upon what a carpet repairperson had previously charged him for installations in other apartments. On appeal, this court found that estimate to be inadmissible hearsay because "the person providing the estimate would have to be called as a witness so the opposing party could cross-examine him." No argument was made that the landlord incorporated the prior quote into his records or relied on it in making business decisions. Accordingly, *Estie* is distinguishable from the case at bar. The same distinction exists in *State v. Phillips*, 11th Dist. Lake No. 2016-L-029, 2017-Ohio-1204 and

6

*Mentor Economic Assistance Corp. v. Eichels*, 11th Dist. No. 2015-L-097, 2016-Ohio-1162.

{¶18} Ms. Workman also cites *State v. Struble*, 11th Dist. Lake No. 2016-L-108, 2017-Ohio-9326, in support of her argument. However, in *Struble,* this court did not address this issue. There, the state conceded that the testimony of these witnesses was insufficient to lay an adequate foundation for admissibility and this court rejected the state's harmless error argument.

{¶19} Here, BONYM sought to admit a loan history summary, part of which was created by a prior sub-servicer, and the notice of default, wholly created by a prior sub-servicer. BONYM called Ms. Knowles, an employee of the current sub-servicer, Shellpoint, with personal knowledge of the subject Mortgage Loan. Contrary to Ms. Workman's apparent argument that there was no evidence the exhibits were trustworthy, Ms. Knowles also testified as to the records transfer process between the prior sub-servicer and Shellpoint, in which the information is "scrubbed" and audited for accuracy in a three-step boarding process; if any discrepancies are found, they are either corrected or the accounts are repurchased by Bank of America. The records that pass auditing are incorporated into Shellpoint's systems. Furthermore, Ms. Knowles specifically testified that Shellpoint bases its business decisions on these records generated by prior servicers and relies on them in the case of every loan because Shellpoint does not originate loans.

{¶20} Following the precedent set by this court in *Purola,* we find that under the circumstances of the case at hand, Ms. Knowles' testimony was sufficient to establish a foundation for the admission of those exhibits under the business records exception.

{¶21} Accordingly, Ms. Workman's first assignment of error is without merit.

7

{¶22} Ms. Workman's second assignment of error states:

{¶23} The trial court erred by finding that the Plaintiff/Appellee complied with the Notice of Acceleration condition precedent to foreclosure by notice in October of 2012, where the debt had been reduced to judgment which was not vacated until April of 2013.

{¶24} Under this assignment of error, Ms. Workman argues, briefly and without citing any authority, that BONYM was required to first vacate the 2007 Judgment before serving a new notice of default. BONYM argues that the bankruptcy court's discharge order effectively nullified the 2007 Judgment as the amount due was no longer reflected accurately in that judgment; the loan was considered "current" and BONYM could not execute upon the 2007 Judgment. Thus, it argues, the trial court's 2013 order to vacate the 2007 Judgment only acknowledged what the bankruptcy court had already determined.

{¶25} In support of her argument, Ms. Workman's points to the fact that Shellpoint sent another notice of acceleration in September 2015 as evidence that BONYM did not truly believe the October 16, 2012 letter was sufficient. However, this argument is not persuasive as Ms. Knowles testified that it was Shellpoint's standard practice upon the transfer of a loan in default to them from a prior sub-servicer to send out a new notice of acceleration in cases of default.

{¶26} Additionally, Ms. Workman argues that until the 2007 Judgment was vacated "there was no debt to accelerate." However, this argument ignores the proceedings in Bankruptcy Court and contradicts Ms. Workman's Voluntary Petition for bankruptcy. In her Voluntary Petition Schedule A she lists the Property and notes that, at the time of filing, there was a secured claim against the Property in the amount of $132,200.00, and in Schedule D she lists "Bank of New York c/o Countrywide Home

8

Loans" as one of the creditors. Notably, she did not mark the box to indicate this debt was "disputed." Moreover, the Bankruptcy Court found that Ms. Workman owed the Bank of New York an arrearage on the Mortgage Loan, and set up a repayment plan, which Ms. Workman complied with. Ms. Workman cannot now argue that there was no debt until the 2007 Judgment was vacated. *See Trumbull Twp. Bd. of Trustees v. Rickard*, 11th Dist. Ashtabula No. 2017-A-0048, 2019-Ohio-2502, ¶25, quoting *Lynch v. Lakewood City School Dist. Bd. of Edn.*, 116 Ohio St. 361 (1927), paragraph three of the syllabus (""If a 'judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away * * * the right to appeal or prosecute error or even to move for vacation of judgment.'").

{¶27} While there appears to be no case law in Ohio discussing this particular question, the Bankruptcy Code provides that "a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured * * * until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C. §1322(c)(1). This provision, "makes it clear that cure and deceleration are permissible until an actual foreclosure sale." *In re Boylan*, 255 B.R. 311, 313 (Bankr. S.D. Ohio 2000).

{¶28} Here, the Property was not sold following the 2007 Judgment as Ms. Workman's order of sale was cancelled pending her bankruptcy proceedings. After the Bankruptcy Court entered its Order of Discharge on December 15, 2011 and its Final Decree closing the case on May 10, 2012, Ms. Workman was considered "current" on her Mortgage Loan. As Ms. Workman had cured the Mortgage Loan arrearages, the Mortgage Loan was decelerated, and Ms. Workman was returned to pre-default status

9

considered current. Ms. Workman, however, was required to continue payments in accordance with the Mortgage Loan after being discharged from bankruptcy. Indeed, the Bankruptcy Court specifically stated, in reference to the Mortgage Loan, that the "Debtor shall pay all post-petition mortgage payments and real estate taxes as those payments ordinarily come due beginning with the first payment due after the filing of the case."

{¶29} Further, upon Ms. Workman's discharge in bankruptcy, BONYM could no longer execute upon the 2007 Judgment as the amount owing was no longer correctly reflected in the order. Thus, we agree that the Bankruptcy Court's judgments effectively nullified the 2007 Judgment. As such, prior to bringing an action in foreclosure, BONYM was required to, and did, issue a new notice of default. Whether or not the 2007 Judgment was vacated at the time the notice of default was sent, it nevertheless served to inform Ms. Workman that she was again in default and that failure to bring her account current may result in acceleration of the note and foreclosure. Thus, the notice of default sent in 2012 was sufficient to satisfy this condition precedent to foreclosure.

{¶30} Accordingly, we find the Bankruptcy Court's discharge order effectively nullified the 2007 Judgment, such that BONYM was not required to seek vacation of that order prior to sending a new notice of default.

{¶31} Ms. Workman's second assignment of error is without merit.

{¶32} Ms. Workman's third assignment of error states:

{¶33} The trial court erred by finding that the Plaintiff/Appellee was a valid Assignee of the Mortgage.

{¶34} Under this assignment of error, Ms. Workman first argues that the assignment bears the same defect present in the notice of default; to wit, it was ineffective because it was assigned before the 2007 Judgment was vacated. As we have discussed

10

this matter under the second assignment of error, we will not reiterate it again here and find this argument to be without merit.

{¶35} Ms. Workman also argues that BONYM presented no evidence that a power of attorney was ever recorded in Lake County prior to the execution and recording of the assignment, as required by R.C. 1338.04 and R.C. 5301.231(A). Accordingly, she argues, the assignment of mortgage must be deemed invalid, rendering BONYM without standing to bring this action.

{¶36} BONYM argues that Ms. Workman has no standing to challenge the assignment of mortgage to BONYM, and that even if she did have standing, a lack of a power of attorney does not render the assignment invalid or provide a basis for reversal. Moreover, BONYM argues, it has standing because the negotiation of the note to BONYM operates as an equitable assignment of mortgage as a matter of law. Ms. Workman counters that she has standing as she is the third party the statute is intended to protect.

{¶37} Here, the assignment of mortgage entered into evidence purports to assign the mortgage from "Bank of New York Mellon as Trustee for the Certificateholders of Cwalt 2004-28CB" (the "Assignor") to BONYM. The Assignor executed the document: "Bank of New York Mellon as Trustee for the Certificateholders of CWalt 2004-28CB by it's [sic] attorney-in-fact Ocwen Loan Servicing, LLC." However, Ms. Workman correctly notes there is no evidence in the record to show that a power of attorney was recorded as required by R.C. 1338.04, which states:

> {¶38} A power of attorney for the conveyance, mortgage, or lease of an interest in real property must be recorded in the office of the county recorder of the county in which such property is situated, previous to the recording of a deed, mortgage, or lease by virtue of such power of attorney.

11

{¶39} "In a mortgage foreclosure action, the mortgage lender must establish an interest in the promissory note or in the mortgage in order to have standing to invoke the jurisdiction of the common pleas court." *Wells Fargo Bank v. Watson*, 11th Dist. Ashtabula No. 2014-A-0062, 2015-Ohio-2599, ¶24 citing *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, ¶28. "The requirement of an 'interest' can be met by showing an assignment of either the note or mortgage." *Fed. Home Loan Mtge. Corp. v. Koch*, 11th Dist. Geauga No. 2012-G-3084, 2013-Ohio-4423, ¶24. Whether standing exists is a matter of law that we review de novo. *Watson, supra,* at ¶25, citing *Bank of Am., NA v. Barber*, 11th Dist. Lake No. 2013-L-014, 2013-Ohio-4103, ¶19.

{¶40} "[I]t is well settled in Ohio that mortgage debtors do not have standing to challenge mortgage assignments." *Watson, supra,* at ¶52. "[W]hen a mortgagor/debtor * * * is not a party to the mortgage assignment, and his contractual obligations under the mortgage are not affected in any way by the assignment, the debtor lacks standing to challenge the validity of the assignment." *Id.,* citing *Waterfall Victoria Master Fund v. Yeager*, 11th Dist. Lake No. 2012-L-071, 2013-Ohio-3206, ¶21. See also *Bank of New York Mellon v. Antes*, 11th Dist. Trumbull No. 2014-T-0028, 2014-Ohio-5474, ¶36; *PennyMac Corp. v. Nardi*, 11th Dist. Portage No. 2014-P-0014, 2014-Ohio-5710, ¶17.

{¶41} Here, as there is no evidence that Ms. Workman's obligations under the mortgage were in any way affected by the assignment, she does not have standing to challenge the mortgage assignment at issue here. And further, contrary to Ms. Workman's argument that she is the third-party R.C. 1337.04 is intended to protect, "[t]he recording statute, R.C. 1337.04, was not enacted for the benefit of mortgagors, but for

the protection of third persons who might acquire legal interests in the property." *Henry v. BancOhio Natl. Bank of Columbus*, 74 Ohio App.3d 209, 212, (10th Dist.1991), citing *Fosdick v. Barr*, 3 Ohio St. 471 (1854); *Van Thorniley v. Peters*, 26 Ohio St. 471 (1875). See also *Wells Fargo Bank, N.A. v. Todt*, 8th Dist. Cuyahoga No. 95558, 2011-Ohio-1376, ¶9.

{¶42}   Accordingly, Ms. Workman's third assignment of error is without merit.

{¶43}   Ms. Workman's fourth assignment of error states:

{¶44}   The trial court erred by finding that Plaintiff/Appellee had any right to enforce the Note on the day the Complaint was filed, and thus any standing to file this action.

{¶45}   Under this assignment of error, Ms. Workman argues BONYM did not have standing to enforce the Note as it was not the holder of the Note at the time of filing the complaint. The original Note produced at trial is endorsed in blank and Ms. Knowles testified that, though Ocwen determined the original Note to be lost at the time of the filing of the complaint, she retrieved the original Note from the Bank of America subsequent to the filing of the complaint. Accordingly, Ms. Workman argues, as Bank of America was in possession of the original Note endorsed in blank at the time of the filing of the complaint, it was the one entitled to enforce the Mortgage Loan, not BONYM. She also argues that "Bank of America itself claims to be the investor, not just the servicer, until well after the complaint was filed." BONYM asserts that Bank of America, the master servicer of the Mortgage Loan, held the Note as BONYM's agent, and that BONYM had constructive possession of the original Note at the time of filing the complaint and throughout trial.

{¶46}   The lender must establish it was the holder of the note or a party entitled to enforce the note at the time the complaint was filed. *Schwartzwald, supra*, at ¶3. There

13

is no standing to proceed with the foreclosure if the interest did not exist at the time the foreclosure complaint was filed. *Id.* at ¶27. "Although the plaintiff in a foreclosure action must have standing at the time suit is commenced, proof of standing may be submitted subsequent to the filing of the complaint." *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, ¶17. As noted under the third assignment of error, appellate courts review issues of standing de novo. *Watson, supra.*

{¶47} "To be a 'holder,' a party must be in possession of the instrument that is either payable to the party in possession (specifically endorsed) or payable to bearer (blank endorsement)." (Citations omitted.) *Deutsche Bank National Trust Company, As Trustee For American Home Mortgage Assets Trust 2007-2, Mortgage-Backed Pass-Through Certificates Series 2007-2, v. Julie A. Ayers, et al.,* 11th Dist. Portage No. 2019-P-0094, 2020-Ohio-1332, ¶73. Further, this court has recently held that "[a] person is a holder of a negotiable instrument, and entitled to enforce the instrument, when the instrument is in the physical possession of his *or her agent*." (Emphasis added.) *Id.,* citing *U.S. Bank Natl. Assn. v. Gray*, 10th Dist. Franklin No. 12AP-953, 2013-Ohio-3340, ¶25. Accordingly, "[a] plaintiff does not lose constructive and legal possession of bearer paper merely because it was held by an agent on behalf of the plaintiff." *U.S. Bank Natl. Assn. v. Crow*, 7th Dist. Mahoning No. 15 MA 0113, 2016-Ohio-5391, ¶33, citing *Gray, supra*.

{¶48} "The doctrine of constructive possession is consistent with UCC principles governing transfer of negotiable instruments. As recognized in the official comment to the UCC's definition of negotiation, '[n]egotiation always requires a change in possession of the instrument because nobody can be a holder without possessing the instrument, *either*

14

*directly or through an agent.*' (Emphasis added.)" *Gray*, *supra*, quoting UCC Official Comment, Section 3–201, Comment 1 (1990). See also, *Freedom Mtge. Corp. v. Vitale*, 5th Dist. Tuscarawas No. 2013 AP 08 0037, 2014-Ohio-1549, ¶16.

{¶49} Furthermore, "[i]n situations where the holder's agent is in physical possession of the note, the holder may still enforce the note based upon constructive possession of the note. However, a note indorsed in blank does not, on its face, establish who is in possession of the note and when that possession transpired. Thus, a supporting affidavit must attest to how and when the entity became the holder of the note and generally the affiant must produce supporting business records, other than the note, to establish possession." (Citations omitted.) *Fed. Natl. Mtge. Assn. v. McFerren*, 9th Dist. Summit No. 28814, 2018-Ohio-5319, ¶21.

{¶50} Here, it is not disputed the Bank of America was in possession of the original Note at the time of the filing of the complaint. Ms. Knowles testified that Bank of America was the master servicer of the Mortgage Loan; that Bank of America had been in possession of the original Note since 2004, as evidenced by the routing history she reviewed; and that it was the historical practice of Bank of America, as master servicer, to hold the notes for the life of the loan. Under these circumstances, this was sufficient to show that BONYM had constructive possession of the Note at the time of filing the complaint. Thus, the trial court did not err in drawing this conclusion.

{¶51} Furthermore, we note that Ms. Workman's argument that Bank of America itself claimed to be the owner of the Mortgage Loan is without merit. In support, she points to Defendant's Exhibits 2 through 6 entered into evidence, which she suggests supports her argument.

15

{¶52} Defendant's Exhibit 2, an August 15, 2015 letter from Shellpoint, informs Ms. Workman "that the servicing of your loan has been transferred from Bank of America, N.A. to Shellpoint Mortgage Servicing." This does not support Ms. Workman's argument as the letter states, apparently incorrectly, that Bank of America was the prior servicer, not owner.

{¶53} Defendant's Exhibit 5, an October 26, 2015 letter from Shellpoint to Ms. Workman states: "The Bank of New York Mellon FKA the Bank of New York, as Trustee for the certificate holders of CWALT, Inc., Alternative Loan Trust 2004-28cb, Mortgage Pass-Through Certificates, Series 2004-28cb ("BONY") is currently the owner of the above referenced loan." This exhibit also does not support Ms. Workman's argument, as this letter states BONYM is the owner of the loan.

{¶54} Defendant's Exhibit 3, an August 24, 2015 Validation of Debt Notice from Shellpoint to Ms. Workman, states: "The creditor to whom the debt is owed is Bank of America, N.A.. [sic] Shellpoint Mortgage Servicing ("Shellpoint") is collecting the debt on behalf of Bank of America, N.A." And Defendant's Exhibit 4 and Defendant's Exhibit 6, are both letters, dated October 8, 2015 and October 14, 2016, respectively, to Ms. Workman in response to an inquiry. Both letters state her "account [is] serviced by [Shellpoint] on behalf of Bank of America, N.A., the owner of your loan. Their contact information is: Address: 101 Barclay St., 8W, New York, NY 10286." However, Ms. Knowles testified that this is BONYM's address.

{¶55} None of these exhibits, nor anything in the record, support Ms. Workman's argument that Bank of America *itself* made the assertion that it was the owner of the Mortgage Loan. The five documents that Ms. Workman cites are letters from Shellpoint,

16

not Bank of America. Further, the documents from Shellpoint which stated that Bank of America is the owner of the Mortgage Loan appear to be a typographical error, corrected in other documents by Shellpoint and clarified by Ms. Knowles' testimony at trial.

{¶56} Accordingly, Ms. Workman's fourth assignment of error is without merit.

{¶57} Ms. Workman's fifth assignment of error states:

{¶58} The trial court erred by dismissing the Appellant's counterclaims.

{¶59} Ms. Workman's counterclaim asserts that BONYM violated the Fair Debt Collection Practices Act, 15 U.S.C. 1692, and that BONYM is a debt collector attempting to collect a debt not owned by BONYM. However, as we have established above, BONYM owned the Mortgage Loan and was entitled to bring this action in foreclosure. Accordingly, the trial court did not err in dismissing Ms. Workman's counterclaim.

{¶60} Ms. Workman's fifth assignment of error is without merit.

{¶61} In light of the foregoing, the judgment of the Lake County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J.,

MARY JANE TRAPP, J.,

concur.

17