[Cite as *MidFirst Bank v. Cicoretti*, 2023-Ohio-3599.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

MIDFIRST BANK,

Plaintiff-Appellee,

v.

ANDREA CICORETTI et al.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 22 MA 0074**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2022 CV 00291

**BEFORE:**
Cheryl L. Waite, David A. D'Apolito, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Ann Marie Johnson* and *Atty. Matthew J. Richardson*, Manley, Deas, Kochalski, LLC, P.O. Box 165028, Columbus, Ohio 43216-5028, for Plaintiff-Appellee

*Atty. Bruce M. Broyles*, 1379 Standing Stone Way, Lancaster, Ohio 43130, for Defendants-Appellants

Dated: September 29, 2023

---

**WAITE, J.**

{¶1}  This is an appeal of a judgment entry and decree in foreclosure by the homeowner.  Appellee MidFirst Bank ("MidFirst") is the current holder of the note and mortgage.  Appellants Andrea and Dean Cicoretti failed to make payments on the note, resulting in Appellee filing a foreclosure complaint.  The trial court ruled in favor of Appellee in summary judgment.  Appellants argue that Appellee was required to hold a face-to-face interview with them pursuant to C.F.R. 203.604(b) prior to filing for foreclosure, but failed to do so.  MidFirst responded by arguing that it did not have a branch office within 200 miles of the mortgaged property and was not required to have a face-to-face meeting under C.F.R. 203.604(c)(2).  Appellants contend that the original mortgagee, Bank of America, did have a branch office within 200 miles, and on this basis, a face-to-face interview was required.  Appellants provide no caselaw for the novel idea that it is the original mortgagee, rather than the current mortgagee, that triggers the 200-mile requirement found in C.F.R. 203.604(b).

{¶2}  Appellants also argue that financial attachments to the affidavit of Holly Allegre ("Allegre"), a Vice President at MidFirst Bank, relied on hearsay evidence and were not admissible as prior business records.  They claim the records of their payment history on the mortgage were required to be authenticated by the prior loan servicer instead of Allegre.  We have previously rejected this authentication requirement in *PNC Mtge., a Div. of PNC Bank, Natl. Assn. v. Krynicki*, 7th Dist. No. 15 MA 0194, 2017-Ohio-808, 85 N.E.3d 1024.  Because neither of Appellants' arguments have merit, the judgment of the trial court is affirmed.

Case No. 22 MA 0074

Facts and Procedural History

{¶3}     On April 16, 2010, Appellant Andrea Cicoretti signed a promissory note ("Note") payable to Bank of America, N.A. ("Bank of America") for $274,928.00, with an interest rate of 4.125%, on property located at 3755 Sugarbush Drive, Canfield, Ohio.  It was a 30-year note maturing in 2040.  To secure the Note, Appellants jointly entered into an open-ended mortgage with Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Bank of America.  The mortgage was a Federal Housing Authority ("FHA") secured mortgage.  MERS assigned the mortgage to Bank of America on October 4, 2012.  The mortgage was then assigned to Nationstar Mortgage, LLC ("Nationstar"), on July 17, 2013.  Appellants defaulted on the mortgage.  On November 1, 2014, Nationstar and Appellants entered into a loan modification agreement, revising the amount of the loan to $296,724.88.  On May 21, 2020, Nationstar assigned the mortgage to MidFirst.

{¶4}     Appellants again failed to make payments on the mortgage starting in early 2020.  Appellee filed its foreclosure complaint on February 25, 2022.  Appellee filed a motion for summary judgment on May 4, 2022.  Attached to the motion was the affidavit of Holly Allegre, a Vice President at MidFirst Bank.  Allegre's affidavit states:

> If the mortgage loan was serviced by another entity prior to MidFirst Bank, the business records of the prior entity have been integrated into the business records of MidFirst Bank, such that the entities records, including the collateral file, payment histories, communication logs, default letters, information, and comments concerning the mortgage are now integrated into MidFirst Bank's business records.  MidFirst Bank maintains quality control and verification procedures to ensure the accuracy of the records

transferred from a prior entity. It is the regular practice of MidFirst Bank to integrate the prior entities records into its business records, and to rely upon the records of the prior entity in providing mortgage loan services.

(5/4/22 MSJ, Allegre Affidavit.)

{¶5} Attached to the affidavit was a schedule of payments from MidFirst indicating the original loan amount, escrow amounts, loan activity from June 4, 2020 until March 10, 2022, and the current amount due on the loan, $256,016.50. The last payment on the loan was made on February 28, 2020, representing the payment due on December 1, 2019. Also attached to the affidavit were other records of loan payments going back to April 19, 2010. Some of these records had the name "Mr. Cooper" typed at the top of the page.

{¶6} On June 1, 2022, Appellants filed a response in opposition to summary judgment. The only evidence attached to the response was an affidavit from Appellant Dean Cicoretti stating that Bank of America was the original lender, that there was a Bank of America branch within 100 miles of his home, and that no one from Bank of America, Nationstar, or MidFirst attempted to arrange a face-to-face meeting prior to filing the foreclosure action.

{¶7} On June 10, 2022, the trial court ruled in favor of Appellee on its motion for summary judgment and issued a judgment entry and decree in foreclosure. Appellants filed this timely appeal on June 29, 2022. Appellants raise two assignments of error.

### Summary Judgment Standard

{¶8} An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R.

56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶9}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**{¶10}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that

have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED IN DETERMINING THAT APPELLEE WAS NOT REQUIRED TO COMPLY WITH THE FACE-TO-FACE MEETING REQUIREMENT OF 24 CFR § 203.604(b) BASED UPON APPELLEE NOT HAVING AN OFFICE WITHIN 200 MILES OF THE MORTGAGED PROPERTY WHEN THE ORIGINAL MORTGAGEE BANK OF AMERICA HAD AN OFFICE WITHIN THAT 200 MILE THRESHOLD AND APPELLEE OBTAINED ITS INTEREST IN THE MORTGAGE BY ASSIGNMENT.

**{¶11}** Appellants argue that, on a mortgage backed by the FHA, a lender cannot foreclose on the mortgage unless it satisfies a condition precedent for foreclosure under 24 C.F.R. 203.604(b), which states: "The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." Appellants acknowledge that no face-to-face interview is required if "[t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either" under the exception found in 24 C.F.R. 203.604(c)(2). Appellants contend that "mortgagee" pursuant to 24 C.F.R. 203.604(c)(2) includes prior mortgagees that have assigned their interest to another party. Appellants assert that Bank of America was the original mortgagee and that the mortgaged property is within 200 miles of a branch of Bank of America. Appellants

conclude that Appellee MidFirst, the current assignee of the mortgage, should have held a face-to-face interview, and that failure to do so renders the foreclosure invalid.

{¶12} Appellee submitted evidence that MidFirst had no branch offices within 200 miles of Appellants' property. Appellee argues that Appellants failed to produce any evidence on this matter that would create a genuine issue of material fact. The only potentially relevant evidence Appellants produced was an affidavit stating that Bank of America had a branch office within 100 miles of the mortgaged property. Appellee argues that this fact would only be relevant if Appellants were correct that the 200-mile requirement found in 24 C.F.R. 203.604(c)(2) applies to prior assignors of the mortgage. Appellee contends that Appellants have produced no law or other precedent for this novel interpretation. Appellee concludes that the legal basis of their argument has no merit, that the 200-mile rule does not apply to prior assignors of the mortgage but only to the current mortgagee, and as it is undisputed that MidFirst has no office or branch within 200 miles of the mortgaged property, no face-to-face interview was required.

{¶13} Appellants cite only two potentially relevant cases in their brief, neither of which interprets or mentions 24 C.F.R. 203.604 or the face-to-face interview requirement. The first, *Citizens Fed. Bank, F.S.B. v. Brickler*, 114 Ohio App.3d 401, 409, 683 N.E.2d 358 (2nd Dist.1996), resolves the issue of whether a modification of a loan agreement by the original lender can be enforced against a successor bank after a merger. In a merger of two companies, "the absorbed company becomes a part of the resulting company following merger." *Acordia of Ohio, L.L.C. v. Fishel*, 133 Ohio St.3d 356, 2012-Ohio-4648, 978 N.E.2d 823, ¶ 7. "[A] merger involves the absorption of one company by another, the latter retaining its own name and identity, and acquiring the assets, liabilities,

franchises and powers of the former." *ASA Architects, Inc. v. Schlegel*, 75 Ohio St.3d 666, 670–71, 665 N.E.2d 1083 (1996). The conclusion of *Brickler* was yes, the successor bank was bound by the modification.

{¶14} An assignment of a mortgage from one company to another has nothing to do with a merger of two businesses. "An assignment is defined as a transfer to another person of the whole of any property or right therein." *Gionino's Pizzeria Inc. v. Reynolds*, 7th Dist. Carroll No. 20 CA 0940, 2021-Ohio-1289, ¶ 32. *Citizens Fed. Bank, F.S.B.* cannot be used to support Appellants' argument because it deals with merged companies, not the assignment of contractual rights. *Citizens Fed. Bank, F.S.B.* also does not interpret the 200-mile rule or the face-to-face meeting requirement pursuant to FHA regulations. This case in no way supports Appellants' argument regarding the 200-mile rule in 24 C.F.R. 203.604(c)(2).

{¶15} Appellants also cite *EMC Mtge. Corp. v. Jenkins*, 10th Dist. No. 04AP-1319, 164 Ohio App.3d 240, 2005-Ohio-5799, 841 N.E.2d 855, for the premise that an assignee is subject to the preclusive effect of an assignor voluntarily dismissing a foreclosure complaint twice. This case interpreted the two-dismissal rule of Civ.R. 41(A)(1), in which two voluntary dismissals of the same complaint act as an adjudication on the merits, barring a third filing on grounds of *res judicata*. Again, this case has no connection or bearing on Appellants' argument. Bank of America did not file a complaint against Appellants that could somehow be used to invalidate MidFirst's complaint. Appellants do not assert that Bank of America took any action that could possibly have *res judicata* effect with respect to a future foreclosure action. *EMC Mtge. Corp.* provides no guidance to the issue before us.

Case No. 22 MA 0074

{¶16} *EMC Mtge. Corp.* actually directly contradicts the argument that Appellants are making. Appellants argue that Bank of America, as an assignor of the mortgage, should continue to be treated as a mortagee, even though all rights regarding the note and mortgage were assigned to MidFirst. *EMC Mtge. Corp.*, held that: "[a]n assignee * * * succeeds to all the rights and remedies of the [assignor]." *Id.* at ¶ 20, citing *Siebert v. Columbus & Franklin Cty. Metro. Park Dist.*, Franklin App. No. 00AP–583, 2000 WL 1877585 (Dec. 28, 2000). If MidFirst succeeded to all the rights and remedies of Bank of America, then surely MidFirst has the right to rely on the fact that it has no branch offices within 200-miles of Appellants' property, regardless of where Bank of America branches are located.

{¶17} We note that the face-to-face interview is merely one part of the FHA scheme of loss mitigation prior to a bank filing a foreclosure action:

> The face-to-face meeting regulation was promulgated under 12 U.S.C. § 1715u(a), which requires mortgagees holding federally insured loans * * * to "engage in loss mitigation actions" in order to "provid[e] an alternative to foreclosure." The regulation advances that statutory objective by making in-person meetings available, where reasonably feasible, to facilitate the discussion of loss-mitigation options. But an office that does no mortgage-related business at all, even if within 200 miles of a mortgagor's home, will be poorly positioned to discuss the mortgage-specific loss-mitigation options outlined by statute, "such as special forbearance, loan modification, preforeclosure sale, support for borrower housing counseling, subordinate

lien resolution, borrower incentives, and deeds in lieu of foreclosure." See 12 U.S.C. § 1715u(a).

*Stepp v. U.S. Bank Tr. Natl. Assn.*, 956 F.3d 266, 268-269 (4th Cir.2020).

**{¶18}** Bank of America has no further rights or duties regarding Appellants' mortgage, and so cannot engage in loss mitigation. Only the current mortgagee can engage in mitigation. Appellants' argument is essentially that a prior mortgagee, if it has a branch office within 200 miles of the property, must engage in a meaningless interview with the borrower before allowing the current mortgagee to file a foreclosure complaint. In addition, it is unclear how MidFirst would have any power to force Bank of America to engage in a face-to-face interview, as the two financial institutions are unrelated companies. Appellants' argument would render 24 C.F.R. 203.604(b) as nothing more than a bureaucratic delay mechanism rather than as a meaningful part of the larger FHA purpose.

**{¶19}** Appellants' first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN RELYING UPON THE STATEMENT OF HOLLY ALLEGRE REGARDING THE BALANCE DUE AND THE PAYMENT HISTORY OF MR. COOPER AS THEY WERE INADMISSIBLE HEARSAY AND DID NOT QUALIFY UNDER BUSINESS RECORDS EXCEPTION OF EVIDENCE RULE 806(6).

**{¶20}** Appellants contend that Appellee used inadmissible hearsay evidence to support its motion for summary judgment. Appellants argue that some of the attachments

to the affidavit of Holly Allegre, a Vice President at MidFirst Bank, were hearsay because they were not properly authenticated by her affidavit. Appellants focus on the payment records from "Mr. Cooper" that were part of Exhibit F attached to the affidavit. Appellants submit that only a records custodian from "Mr. Cooper" could authenticate its own business records. Mr. Cooper is an alternative dba name for Nationstar Mortgage LLC. *Nationstar Mtge. LLC. v. Billock*, 7th Dist. Mahoning No. 19 MA 0107, 2020-Ohio-4723, ¶ 1.

**{¶21}** Under Evid.R. 801(C), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Generally, hearsay statements contained within an affidavit supporting a motion for summary judgment are inadmissible unless a hearsay exception applies. *Salemi v. Cleveland Metroparks*, 145 Ohio St.3d 408, 2016-Ohio-1192, 49 N.E.3d 1296, ¶ 20. One such exception is found in Evid.R. 803(6), which states that records kept in the course of a regularly conducted business can qualify as an exception to the hearsay rule. Qualifying business records must be made by "a person with knowledge" and must be authenticated by "the custodian or other qualified witness[.]" Evid.R. 803(6). It is common in foreclosure cases for a representative of the current mortgagee to submit an affidavit in support of foreclosure, with exhibits attached to the affidavit setting forth the loan amount, payment history, and current liability on the loan.

**{¶22}** Appellants' argument regarding who must authenticate each of the exhibits in a foreclosure action is not new. In fact, Appellants' counsel made the same argument in his first assignment of error in *PNC Mtge., a Div. of PNC Bank, Natl. Assn. v. Krynicki*, 7th Dist. No. 15 MA 0194, 2017-Ohio-808, 85 N.E.3d 1024. We rejected the argument in

that case, where PNC Mortgage filed a foreclosure complaint against the homeowner. PNC Mortgage, as part of its motion for summary judgment, attached an affidavit from Alyssa Salyers, a representative of the loan servicer Caliber Home Loans. Attached to the affidavit were various records of PNC Mortgage, including the loan, mortgage, and PNC Mortgage's letter to the homeowner notifying him of the default of the loan. Counsel argued on appeal that the attachments to the affidavit were hearsay because Salyers, as an employee of Caliber, could not authenticate records from PNC Mortgage. *Id.* at ¶ 9. PNC Mortgage contended that the affidavit met the requirements of the "adoptive business records exception" pursuant to Evid.R. 803(6). We held that requiring a foundational witness to have personally participated in the creation of each business record attached to an affidavit would "eviscerate the business records exception." *Id.* at ¶ 13. We accepted PNC Mortgage's argument and overruled counsel's assignment of error, the same one he raises in this appeal.

**{¶23}** Under the adoptive business records exception, Evid.R. 803(6) "does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document or of the transaction giving rise to the record." *Green Tree Servicing, L.L.C. v. Roberts*, 12th Dist. Butler No. CA2013-03-039, 2013-Ohio-5362, ¶ 30. Instead, Evid.R. 803(6) "permits exhibits to be admitted as business records of an entity even when the entity was not the maker of the records, so long as the other requirements of [Evid.R. 803(6)] are met and circumstances indicate the records are trustworthy." *Ohio Receivables, L.L.C. v. Dallariva*, 10th Dist. Franklin No. 11AP-951, 2012-Ohio-3165, ¶ 20.

**{¶24}** Appellants cite *Wells Fargo Bank, NA v. Russell*, 9th Dist. Summit No. 29005, 2019-Ohio-776, to support a claim that the "adoptive business records exception" should be rejected.  We have accepted the adoptive business records exception, along with most other districts.   Appellants' reliance on an outlier case from the Ninth District to argue against the rule is unpersuasive.  See *Great Seneca Financial v. Felty*, 170 Ohio App.3d 737, 869 N.E.2d 30, 2006-Ohio-6618 (1st Dist.); *Beneficial Financial I Inc. v. Saunders*, 4th Dist. Gallia No. 18CA5, 2019-Ohio-3577; *PNC Mtge., a Div. of PNC Bank, supra*; *RBS Citizens, N.A. v. Zigdon*, 8th Dist. Cuyahoga No. 93945, 2010-Ohio-3511; *Ohio Receivables, L.L.C. v. Dallariva*, 10th Dist. Franklin No. 11AP-951, 2012-Ohio-3165; *Bank of New York Mellon v. Workman*, 11th Dist. Lake No. 2019-L-134, 2020-Ohio-3330; *Green Tree Servicing, L.L.C. v. Roberts*, 12th Dist. Butler No. CA2013-03-039, 2013-Ohio-5362.  This Court's analysis and holdings in *PNC Mtge., a Div. of PNC Bank, Natl. Assn.* apply as precedent in this appeal.

**{¶25}** In *PNC Mtge.*, the Salyers' affidavit stated:  that Caliber had custody of and maintains records related to the note and mortgage concerning the borrower; that Salyers knew how Caliber's business records were created and maintained; that PNC's business records relating to the borrower's note and mortgage had been incorporated into Caliber's business records; that Caliber's business records were made at or near the time of the occurrence of the matters recorded by persons with knowledge of the information in the record or from information transmitted by persons with knowledge; that these records were kept in the regular course of Caliber's business activities; that Caliber creates records such as these as a regular practice; that PNC was the original payee of the note at issue; that both the note and mortgage are in the custody of Caliber; that the note and

Case No. 22 MA 0074

mortgage are in default; and that all conditions precedent required by the note and mortgage have been satisfied. *PNC Mtge., a Div. of PNC Bank, supra*, at ¶ 11.

**{¶26}** Allegre's affidavit states that: she was Vice President at MidFirst; she was familiar with MidFirst's business records for the purpose of servicing loans; that she had personal knowledge of the facts and procedures described in the affidavit; that the records of any prior loan servicers were integrated into the business of records of MidFirst; that MidFirst maintains quality control and verification of any transferred records; that it was the regular practice of MidFirst to integrate prior entities' records into their own records in providing loan services; that MidFirst had possession of the note prior to filing the complaint; and that the mortgaged property is not located within 200 miles of the mortgagee, its servicer, or a branch office. These averments, similar to those in *PNC Mtge.,* were sufficient to authenticate the attachments to the affidavit.

**{¶27}** Appellee also posits that, even without the records from Mr. Cooper, other evidence attached to Allegre's affidavit sufficiently supported its motion for summary judgment. MidFirst's own mortgage records were attached to the affidavit. These records showed the original balance of the loan, the current balance, the lack of payments from June 4, 2020, the penalties assessed, and the negative escrow balance. This document alone established that Appellants defaulted on the loan and mortgage and showed how much was due. Although the MidFirst payment records, by themselves, did not provide a complete history of Appellants' payments, this deficiency would not have disqualified MidFirst's records as business records. *Deutsche Bank Natl. Tr. Co. v. Omar*, 9th Dist. Summit No. 29300, 2019-Ohio-5224, ¶ 13. Since there is enough information in MidFirst's own records to support summary judgment, and because there is no evidence

from Appellants challenging those records, Appellee is correct that the trial court properly granted its motion for summary judgment.

## Conclusion

**{¶28}** In this appeal of summary judgment granted to the bank in a foreclosure action, Appellants argue that Appellee was required to hold a face-to-face interview with them prior to filing its foreclosure complaint because the original mortgagee, Bank of America, had a branch within 200 miles of the mortgaged property. Appellee contends that the 200-mile requirement refers only to the current mortgagee and that MidFirst does not have such a branch. Appellants provide no law to support their argument that a prior mortgagee can trigger the 200-mile requirement of C.F.R. 203.604(c)(2) and their interpretation would defeat the purpose of the face-to-face interview rule. Their first assignment of error is overruled. Appellants also argue that the affidavit supporting Appellee's motion for summary judgment relied on hearsay evidence and was not admissible as a prior business record under Evid.R. 803(6). Appellants contend the records of their loan payment history had to be authenticated by the prior loan servicer. We have previously rejected this interpretation of Evid.R. 803(6) and have applied the "adoptive business record" exception. Appellants' second assignment of error is also without merit. The judgment of the trial court is affirmed.

D'Apolito, P.J. concurs.

Hanni, J. concurs.

Case No. 22 MA 0074

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**